UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KOW NAI S., <br><br>          Plaintiff, <br><br>v. <br><br>ANDREW M. SAUL, <br><br>          Defendant. | Case No. 19-cv-04396-DMR <br><br>**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT** <br><br>Re: Dkt. Nos. 21-23 |

      Plaintiff Kow Nai S. moves for summary judgment to reverse the Commissioner of the Social Security Administration's (the "Commissioner's") final administrative decision, which found him not disabled and therefore denied his application for benefits under Title II of the Social Security Act, 42 U.S.C. § 401 et seq. [Docket No. 21.] The Commissioner cross-moves to affirm. [Docket No. 22.] For the reasons stated below, the court grants Plaintiff's motion in part and remands this action for further proceedings.

**I.    PROCEDURAL HISTORY**

      Plaintiff filed an application for Social Security Disability Insurance ("SSDI") benefits on September 14, 2015, alleging disability beginning October 2, 2012. Administrative Record ("AR") 161-63. An Administrative Law Judge ("ALJ") held a hearing and issued an unfavorable decision on August 17, 2018. AR 12-25. The ALJ found that Plaintiff has the following severe impairments: bilateral arthritis of the knees and shoulders; right shoulder arthroscopy; disorders of the lumbar spine; right carpal tunnel syndrome; status-post right carpal tunnel release; and right wrist arthroscopy. A.R. 17. The ALJ determined that Plaintiff has the following residual functional capacity ("RFC"):

> [T]he claimant could lift or carry 20 pounds occasionally and 10 pounds frequently. The claimant was able to stand or walk 1 hour at a time for a total of 6 hours in an 8-hour workday, and would need to be able to rest 3 minutes (off task) after standing or walking an hour.

> The claimant was able to sit for 1 hour at a time for a total of 6 hours in an 8-hour workday, but would need to be able to shift positions or stand up every hour at his workstation, for 5 minutes, while remaining on task. The claimant could occasionally climb ladders, ropes or scaffolds. The claimant could frequently balance, stoop, kneel, crouch or crawl. The claimant could frequently reach overhead bilaterally. The claimant could frequently handle, finger and feel, but could not do so continuously [repetitively] for more than 1 hour without a 5 minute break.

A.R. 20.

Relying on the opinion of a vocational expert ("VE"), the ALJ concluded that Plaintiff is able to perform his past work as jewelry preparer, as the job is generally performed. Therefore, the ALJ concluded that Plaintiff is not disabled. A.R. 24-25.

After the Appeals Council denied review, Plaintiff sought review in this court. [Docket No. 1.]

## II. ISSUES FOR REVIEW

1. Did the ALJ err in determining that Plaintiff can perform his past relevant work as a jewelry preparer?

2. Did the ALJ err in evaluating Plaintiff's credibility?

## III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the district court has the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a mere scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir.1996) (internal citation omitted). When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citation and quotation marks omitted).

If the evidence reasonably could support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112

F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "Finally, the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations and internal quotation marks omitted).

## IV.  DISCUSSION

### A.  The ALJ's Determination that Plaintiff is Able to Perform His Past Relevant Work

Plaintiff argues that the ALJ's determination at step four that he is able to perform his past work as a jewelry preparer, as that occupation is generally performed, is not supported by substantial evidence.

#### 1.  Legal Standard

At the fourth step of the sequential evaluation, the ALJ considers the assessment of the claimant's RFC and age, education, and work experience to see if the claimant's impairment prevents the claimant from doing his or her past relevant work. If the claimant is able to perform past relevant work, the ALJ will find that the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(iv); 20 C.F.R. § 404.1520(f). If the claimant cannot perform past relevant work, the analysis proceeds. At the fifth step, the ALJ considers whether the claimant can make an adjustment to other work. If the claimant cannot make an adjustment to other work, the ALJ will find that the claimant is disabled. If the claimant can make an adjustment to other work, the ALJ will find that the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(v); 20 C.F.R. § 404.1520(g); *Tackett*, 180 F.3d at 1098-99. Should the ALJ decide that the claimant is not disabled, "the [SSA] is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [his RFC] and vocational factors." 20 C.F.R. § 416.960(c)(2).

Social Security Ruling ("SSR") 00-4p governs the use of occupational evidence.[1] At steps

---

[1] SSRs "are entitled to 'some deference' as long as they are consistent with the Social Security Act and regulations." *Massachi v. Astrue*, 486 F.3d 1149, 1152, n.6 (9th Cir. 2006) (citations omitted). In *Massachi*, the Ninth Circuit held that an ALJ must comply with SSR 00-4p before relying on the testimony of a vocational expert. *Id.* at 1150.

four and five of the sequential evaluation, ALJs rely on the DOT, including its companion publication, the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles ("SCO"), and testimony from vocational experts in making disability determinations. SSR 00-4p, 2000 WL 1898704 at *2 (S.S.A. Dec. 4, 2000). The DOT is a reference guide in the form of a job catalog that contains standardized occupational information about each occupation. An ALJ is to "rely primarily on the DOT (including its companion publication, the SCO) for information about the requirements of work in the national economy." *Id*. An ALJ may also call upon a VE to provide occupational evidence through testimony at a disability benefits hearing. *Id.* As part of a disability determination, an ALJ must address any conflicts between the VE's testimony and information contained in the DOT. *Id*. at *1. The ALJ has an "affirmative responsibility to ask about any possible conflict between [the VE's testimony about the requirements of a job] and information provided in the DOT." *Id.* at *4.

### 2. Analysis

Relying on the VE's testimony, the ALJ found that Plaintiff is able to perform his past work as a jewelry preparer, DOT 700.687-062, as the work is generally performed. A.R. 24. Plaintiff argues that this finding is not supported by substantial evidence because the VE's testimony that he can perform this occupation conflicts with the DOT. Specifically, the VE testified that an individual with Plaintiff's RFC, including the ability to "[s]it an hour at a time for six hours in [an] eight-hour workday, but [who] would need to be able to shift positions or stand up every hour at his workstation for five minutes while remaining on task," could perform the occupation of jewelry preparer as generally performed. A.R. 71. Plaintiff argues that this testimony conflicts with the DOT, which classifies the occupation of jewelry preparer as "Sedentary Work," 700.687-062 PREPARER, DICOT 700.687-062, because the SSA defines sedentary work as generally requiring a person to remain in a seated position for uninterrupted two-hour intervals. Here, the ALJ found that Plaintiff is not able to remain seated for uninterrupted two-hour intervals, and must be able to stand for 5 minutes after every hour of sitting. Therefore, Plaintiff argues, he is unable to perform his sedentary past relevant work.

Plaintiff cites two Social Security Rulings in which the SSA defines sedentary work as

4

generally requiring a person to remain in a seated position for uninterrupted two-hour intervals. First, SSR 96-9p states in relevant part that "[i]n order to perform a full range of sedentary work, an individual must be able to remain in a seated position for approximately 6 hours of an 8-hour workday, with a morning break, a lunch period, and an afternoon break at approximately 2-hour intervals." *Titles II & XVI: Determining Capability to Do Other Work-Implications of A Residual Functional Capacity for Less Than A Full Range of Sedentary Work*, SSR 96-9P, at *6 (S.S.A. July 2, 1996). According to the SSA, "[i]f an individual is unable to sit for a total of 6 hours in an 8-hour work day, the unskilled sedentary occupational base will be eroded." *Id.* Further, if an individual's need to alternate the required sitting of sedentary work by standing "cannot be accommodated by scheduled breaks and a lunch period, the occupational base for a full range of unskilled sedentary work will be eroded." *Id.* at *7.

Plaintiff also cites SSR 83-12, which explains that a need to alternate sitting and standing may result in an inability to do prolonged sitting:

> In some disability claims, the medical facts lead to an assessment of RFC which is compatible with the performance of either sedentary or light work except that the person must alternate periods of sitting and standing. The individual may be able to sit for a time, but must then get up and stand or walk for awhile before returning to sitting. Such an individual is not functionally capable of doing . . . the prolonged sitting contemplated in the definition of sedentary work . . . . most jobs have ongoing work processes which demand that a worker be in a certain place or posture for at least a certain length of time to accomplish a certain task. Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will. In cases of unusual limitation of ability to sit or stand, a [vocational specialist] should be consulted to clarify the implications for the occupational base.

*Titles II & XVI: Capability to Do Other Work-The Medical-Vocational Rules As A Framework for Evaluating Exertional Limitations Within A Range of Work or Between Ranges of Work*, SSR 83-12, at *4 (S.S.A. 1983).

According to Plaintiff, because the ALJ determined that he is unable to sit for uninterrupted two-hour individuals and needs to be able to shift positions or stand for five minutes every hour, he is unable to perform any sedentary occupation, including his past relevant work.

The court finds that the ALJ did not err at step four because the DOT is silent as to the sitting and standing intervals that the jewelry preparer occupation requires. It provides only that

5

the occupation is classified as "Sedentary Work," and states that the occupation "involves sitting most of the time, but may involve walking or standing for brief periods of time." 700.687-062 PREPARER, DICOT 700.687-062.  Contrary to Plaintiff's suggestion, the DOT does not provide that an individual performing the occupation must be able to remain seated for two-hour intervals.  The Ninth Circuit has held that there is no conflict between a VE's testimony and the DOT where the DOT is silent on the subject in question; here, the need to shift positions or stand every hour for five minutes.  *See Dewey v. Colvin*, 650 Fed. Appx. 512, 514 (9th Cir. 2016) (finding that because the DOT was silent on whether the jobs in question allow for a sit/stand option, there was no conflict between DOT and VE's testimony that claimant could perform jobs even though he required a sit/stand option and use of a cane to ambulate); *see also McDaniel v. Colvin*, No. 5:16-cv-00869, 2017 WL 1399629, at *4-5 (C.D. Cal. Apr. 18, 2017) (collecting cases).

The ALJ asked about a hypothetical individual's need to shift positions or stand for five minutes of every hour, and the VE testified that such an individual could perform the work of "jewelry preparer as generally performed, and not as actually performed." A.R. 70-71.  He also asked the VE to identify any inconsistency between her testimony and the DOT and she identified none.  *See* A.R. 69.  This testimony properly provided substantial evidence to support the step four finding that Plaintiff is able to perform his past relevant work as a jewelry preparer, as that occupation is generally performed.

### B. The ALJ's Credibility Determination

Plaintiff next argues that the ALJ erred in assessing his credibility.

#### 1. Legal Standard

In general, credibility determinations are the province of the ALJ.  "It is the ALJ's role to resolve evidentiary conflicts.  If there is more than one rational interpretation of the evidence, the ALJ's conclusion must be upheld." *Allen v. Sec'y of Health & Human Servs.*, 726 F.2d 1470, 1473 (9th Cir. 1984) (citations omitted).  An ALJ is not "required to believe every allegation of disabling pain" or other nonexertional impairment. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989) (citing 42 U.S.C. § 423(d)(5)(A)).  However, if an ALJ discredits a claimant's subjective symptom testimony, the ALJ must articulate specific reasons for doing so. *Greger v.*

*Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006).  In evaluating a claimant's credibility, the ALJ cannot rely on general findings, but "must specifically identify what testimony is credible and what evidence undermines the claimant's complaints." *Id*. at 972 (quotations omitted); *see also Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (stating that an ALJ must articulate reasons that are "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony").  The ALJ may consider "ordinary techniques of credibility evaluation," including the claimant's reputation for truthfulness and inconsistencies in testimony, and may also consider a claimant's daily activities, and "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

The determination of whether or not to accept a claimant's testimony regarding subjective symptoms requires a two-step analysis.  20 C.F.R. §§ 404.1529, 416.929; *Smolen*, 80 F.3d at 1281 (citations omitted).  First, the ALJ must determine whether or not there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82.  Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms "based solely on a lack of objective medical evidence to fully corroborate the alleged severity of" the symptoms. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc) (citation omitted).  Absent affirmative evidence that the claimant is malingering, the ALJ must provide "specific, clear and convincing" reasons for rejecting the claimant's testimony. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  The Ninth Circuit has reaffirmed the "specific, clear and convincing" standard applicable to review of an ALJ's decision to reject a claimant's testimony. *See Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014).

### 2.    Analysis

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical

7

evidence and other evidence in the record for the reasons explained in this decision." A.R. 21.

The ALJ provided two reasons for discounting Plaintiff's testimony: 1) that Plaintiff's "statements regarding the limiting effects of his physical impairments were not fully consistent with his activities of daily living and his presentation" and 2) that his allegations "were not fully consistent with and supported by the evidence of record." A.R. 21.

As to the first reason, the ALJ wrote that "[d]espite reporting problems with his back, upper extremities, and lower extremities," Plaintiff is able to shower, prepare simple meals, drive short distances, and pick up his daughter from work and pick up his grandson from school. A.R. 21. This is not a "specific, clear and convincing" reason for rejecting Plaintiff's testimony. *See Vasquez*, 572 F.3d at 591. The Ninth Circuit has instructed that "daily activities may be grounds for an adverse credibility finding if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (quotation omitted). However, "the ALJ must make specific findings relating to [the daily] activities and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination." *Id*. (quotation omitted). The ALJ did not make any such findings in his opinion. Moreover, the ALJ disregarded Plaintiff's testimony about the limits of his abilities to perform some of the activities described by the ALJ. For example, Plaintiff testified that when he showers in the morning, his feet go numb in the shower. A.R. 66. When he described driving to pick up his daughter and grandson, he explained that it takes him a combined total of nine minutes of driving to pick them up. A.R. 66-67 (explaining that his grandson's school is a five minute drive from home and his daughter's workplace is a four-minute drive from the school). The ALJ did not discuss Plaintiff's testimony that when he feels pain in his wrist, he cannot use chopsticks or utensils and instead grabs food with his hand. A.R. 60-61. He also did not address Plaintiff's testimony that he is not able to lift change off of a flat surface, and instead just scrapes it with his left hand into the palm of his right hand. A.R. 61.

The ALJ's second reason for discounting Plaintiff's credibility was that the "evidence of record" was not fully consistent with Plaintiff's allegations. According to the ALJ, the record

1  "indicates relatively stable symptoms" that "have been relatively controlled with sporadic medical
2  treatment," which "suggests that his symptoms were not as severe as alleged[.]" A.R. 21. The
3  ALJ then discussed the medical evidence in the record, including evidence of surgery on
4  Plaintiff's shoulders and right wrist, and observed that Plaintiff's pain is managed with ibuprofen
5  and other over-the-counter pain medications. He concluded that Plaintiff did not receive
6  "consistent aggressive medical treatment" following these procedures. A.R. 21-22. The ALJ also
7  noted that the record contains no evidence that Plaintiff's treating providers recommended
8  restrictions with any consistency or over any extended duration, and that the record does not
9  indicate that he received "consistent medical treatment from September 2016 through the date last
10 insured," which was December 31, 2017. A.R. 22.

The court concludes that the ALJ's characterization of the "evidence of record" as reflecting non-severe symptoms, well-managed pain, and non-aggressive medical treatment is not supported by substantial evidence. The record shows that following a workplace injury in March 2012, Plaintiff underwent three surgeries within less than two years. In November 2012, Plaintiff had surgery on his right shoulder. His doctor performed open biceps tenodesis, arthroscopy with subacromial decompression, arthroscopy with extensive debridement of glenohumeral joint and partial rotator cuff tear and labral tear including SLAP tear. A.R. 346-60. Following the surgery, he was diagnosed with right shoulder biceps tenosynovitis; right shoulder type I SLAP tear; right shoulder subacromial bursitis; and right shoulder subscapularis partial rotator cuff tear. A.R. 360-61. In May 2013, Plaintiff had surgery on his right wrist to address pain, and was diagnosed with right hand carpal tunnel syndrome, right wrist TFCC tear and synovitis. A.R. 309-23. Later that year, in December 2013, he had surgery on his left shoulder. The procedure was a left shoulder arthroscopy with subacromial decompression, left shoulder arthroscopy with extensive debridement of glenohumeral joint and labral tearing, and left shoulder open biceps tenodesis. He was diagnosed post-surgery with left shoulder bursitis, left shoulder superior, anterior, and posterior labral tear, left shoulder biceps tenosynovitis, left shoulder partial rotator cuff tear. A.R. 275-88.

Plaintiff received physical therapy at least twice per week around the dates of his shoulder

surgeries, from November 2012 through January 2013 and then again from January 2014 through March 2014. A.R. 385-450. The physical therapy treatment notes reflect that Plaintiff continually reported pain. *See id*.

In 2015 and 2016, Plaintiff began to complain of lower back pain to his treatment providers, including pain radiating down his leg, and he received an MRI of the spine in March 2015. A.R. 471, 480, 483. The MRI showed congenitally short pedicles throughout the lumbar spine that contribute to a baseline degree of spinal canal and neuroforaminal stenosis. A.R. 483. The findings were most severe at L4-L5, where there is moderate spinal canal and severe bilateral neuroforaminal stenosis. A.R. 483. Plaintiff was eventually diagnosed with chronic low back pain and lumbosacral radiculitis. A.R. 486. In April 2016, Plaintiff was given a steroid injection at L5. One month later, he received a second steroid injection at L4-L5, despite reporting "mild relief only" from his April 2016 injection. A.R. 492-93, 504-05.

This evidence does not support the ALJ's determination that Plaintiff's symptoms were non-severe or well controlled with over-the-counter medications; to the contrary, Plaintiff testified that he takes pain medication at night and that his doctor keeps increasing his dosage, but it does not help with his pain. A.R. 62, 67-68. It also does not support the ALJ's conclusion that Plaintiff has essentially received conservative treatment, as the record shows he has undergone surgeries, months of physical therapy, and steroid injections to treat his symptoms. *See Garrison v. Colvin*, 759 F.3d 995, 1015 n.20 (9th Cir. 2014) ("we doubt that epidural steroid shots to the neck and lower back qualify as 'conservative' medical treatment."). In sum, the court concludes that the purported inconsistency between Plaintiff's testimony and the evidence of record is not supported by substantial evidence. Therefore, it does not constitute a "specific, clear and convincing" reason for rejecting Plaintiff's testimony.

//
//
//
//
//

## V. CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is granted in part and denied in part. This case is remanded for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**

Dated: November 2, 2020



Donna M. Ryu
United States Magistrate Judge